### Succession of WILSON.

### LEWIS v. GRETNA TRUST & SAVINGS BANK.

#### No. 32053.

March 27, 1933.

Rehearing Denied May 1, 1933.

See, also, 175 La. 1078, 145 So. 13.

John E. Fleury, of Gretna, and Spearing & McClendon, of New Orleans, for appellant.

Andrew H. Thalheim, of Gretna, for appellee.

ST. PAUL, Justice.

This is a proceeding to have declared invalid what purports to be the last will and testament of the deceased for vices in the form of the will.

### I.

There are several alleged defects in the will, which is in nuncupative form by public act; but we find it necessary to mention only one, to wit, "that the said document purporting to evidence the last will and testament of the said Priscilla Lewis does not declare that the so called will made by her was written by the Notary as it was dictated * * *."

### II.

The recitals of the will, so far as pertinent here, are as follows:

"The said Priscilla Lewis stated that she wanted to make her last will and testament, which statement she made in the presence of said witnesses and me, Notary, and which testament she proceeded to dictate as follows: (Here follow the disposing words of the testatrix, which are immaterial to the issue before us. And the will then proceeds:)

"It was thus that said testatrix dictated her last will and testament, which was then read to her in a loud and audible voice, in the presence of me, Notary, and the above named witnesses, and the testatrix persisted therein, whereupon she made her mark instead of signing her name because she stated she was unable to write her name, never having been taught to write; all of which was done in the presence of said witnesses and me, Notary, without interruption, and without turning aside to do any other act."

### III.

██ From the foregoing recital it will be seen that the will fails to declare that it was written *by the notary*. It does indeed sufficiently appear that the will was written by *some one*, and was written as it had been dictated; for it was read to the testatrix and *approved* by her as written. But that is not sufficient; it must appear from the recitals of the will itself not only that it was written, and written as dictated, but that it was written *by the notary himself*.

In Masse's Heirs v. Pierre et al., 6 Mart. (N. S.) 263, this court said: "Various objections have been made to the legality of this instrument [a testament made by public act], none of which we deem necessary to notice, except that which relates to the want of mention that it was written by the notary. This we consider a fatal defect. The 92d art. of the old code, page 228, requires, for the validity of a nuncupative will, by public act, that it must be signed by the testator and written by the notary as it is dictated, and that express mention must be made that it was so signed and written. There is no such statement in the will before us, and the want of this formality is declared, by another article of the code to be cause of nullity."

In Devall v. Palms, 20 La. Ann. 202, it was held (see syllabus), that: "A nuncupative will, by public act, must be dictated by the testator, and written down by the notary, as dictated in the presence and hearing of the witnesses; it must show on its face that all the formalities prescribed by law have been strictly complied with, otherwise it will be declared null and void."

In Succession of Dorries, 37 La. Ann. 833, this court said:

"The will of the deceased, which is in the nuncupative form by public act, is attacked on various grounds, one of which is that it does not contain the formal declaration that it was written by the notary.

"We have carefully scanned the instrument and weighed each and every word used in the procès verbal of the notary, whether in the caption or in the closing part, and have failed to find any from which it can be even inferred that the will was written by that officer.

"The law, in mandatory terms, imperiously requires that express mention be made, not only that the will was dictated by the testator and read to him, but also that it was written by the notary; and this under pain of nullity.

"The omission to recite explicitly strict compliance with the requirements of the law is fatal, as it cannot be supplied by testimony aliunde." Citing R. C. C. arts. 1578, 1595, and authorities.

In Miller v. Shumaker, 42 La. Ann. 398, 7 So. 456, it was held (see syllabus), that: "The omission to make express mention, in a nuncupative will by public act, or in equivalent terms, that it was written by the notary, is fatal and invalidates the instrument."

### IV.

■■ The reasons are, that the *formalities* to which testaments are subject are *imperative* under pain of nullity (R. C. C. art. 1595); that one of formalities required for the valid-

ity of a nuncupative testament by public act is that it be written by the notary himself (R. C. C. art. 1578); and it may not be written by any one else even in the presence of the notary [Knight v. Smith, 3 Mart. (O. S.) 156, 164]; that express mention must be made in the act itself that all formalities have been observed (R. C. C. art. 1578); so that such act may prove itself when offered to the judge for execution. R. C. C. art. 1647; C. P. art. 930. Hence: "It is well settled that, since a nuncupative will by public act makes full proof of itself, it must bear upon its face the evidence that all the formalities required by law for its validity have been complied with, inasmuch as the fulfillment of those formalities, when not apparent from the instrument itself, cannot be established by evidence aliunde." Succession of Wilkin, 21 La. Ann. 115, citing Le Blanc v. Baras' Heirs, 16 La. 80.

### Decree.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment in favor of petitioner, George Lewis, and against David Lewis and the Gretna Trust & Savings Bank of Gretna, La., avoiding and setting aside the document passed before Andrew H. Thalheim, notary public for the parish of Jefferson, dated July 15, 1929, and purporting to evidence the last will and testament of Priscilla Wilson, widow of William Lewis, and declaring the same null, void, and of no effect; that the position of dative testamentary executor be declared vacant and that the Gretna Trust & Savings Bank of Gretna, La., be removed therefrom and ordered to turn over and deliver in due time to a properly appointed ad-

ministrator of this succession all of the property, funds, and things of value in its possession. All costs to be paid by the succession.

ROGERS, J., dissents, being of the opinion that the judgment should be affirmed.

ROGERS, Justice (dissenting).

I think the judgment of the district court should be affirmed. In my view, the rules of interpretation applied to a notarial will in the early cases cited in the majority opinion are entirely too technical, and are not in harmony with the recent tendency of our jurisprudence to limit the rigid enforcement of the formalities required in the execution of wills to those instances in which the law is palpably violated. Succession of Crouzeilles, 106 La. 442, 31 So. 64; Succession of Beattie, 163 La. 831, 112 So. 802.

In Prudhomme v. Savant, 150 La. 256, 90 So. 640, this court held the requirement of article 1578 of the Civil Code that a nuncupative testament by public act must be written by the notary as dictated by the testator was fulfilled where the notary wrote the will on the typewriter. It is entirely conceivable that if the same legal proposition had been submitted to the same court which decided the cases cited in the majority opinion a different result would have been reached from that reached in the Prudhomme Case.

There are no sacramental words exacted by law of the notary; and if words are used which taken all together show that the notary did all that the law makes essential, the will is good as to form, although the notary may be confused in his manner of expressing himself. Rongger v. Kissinger, 26

La. Ann. 338; Succession of Marqueze, 50 La. Ann. 68, 23 So. 106. See, also, Duhon v. Duhon, 161 La. 499, 109 So. 44.

The will under review here specifically declares that Priscilla Lewis, the testatrix, appeared before the notary and stated that she wanted to make her last will and testament, "which statement she made in the presence of said witnesses and me, Notary, and which testament she proceeded to. dictate as follows," etc.; also, "it was thus that said testatrix dictated her last will and testament, which was then read to her in a loud and audible voice in the presence of me, notary, and the above named witnesses," etc.

In Pizerot v. Meuillon's Heirs, 3 Mart. (O. S.) 97, the notary had failed to declare, in terms, that the dictating of the will was done in the presence of the witnesses, but the court found that the context disclosed the fact plain enough.

In Seghers v. Antheman, 1 Mart. (N. S.) 73, the will did not contain the declaration, in so many words, that it was read to the testatrix, but the court found that the declaration which the instrument did contain showed that it was read to her.

Again in Forstall v. Forstall, 3 Mart. (N. S.) 367, 368, the court said: "We think if it result from an examination of the whole instrument, that the will was read to the testator in the presence of the witnesses, that it is immaterial in what words that idea is conveyed."

In Rongger v. Kissinger, 26 La. Ann. 338, the notary had failed to declare, in precise terms, that the dictation of the will was

done in presence of the witnesses, but the court found that the context made it plain enough that the dictation, as well as the writing of the will, was done in the presence of the witnesses.

I think that a fair and legitimate construction of what the notary stated shows that the will under review was dictated to him by the testatrix. The recital of the personal appearance of the testatrix before him with her statement that she wanted to make her last will and testament, which she proceeded to dictate in the presence of the witnesses and notary, can only mean that the dictation was to the notary, before whom the testatrix appeared for that specific purpose, and that as thus dictated the will was written by the notary in the performance of his official duty.

There is no charge nor suggestion of fraud in the case, and there is no pretense that the notary did not, as a matter of fact, write the will as it was dictated to him by the testatrix.