196 So. 548

McGINTY v. McGINTY et al.

No. 35308.

April 29, 1940.

Rehearing Denied May 27, 1940.

Goff & Goff, of Arcadia, and Julius T. Long, of Shreveport, for appellants.

R. L. Williams, of Arcadia, for appellee.

HIGGINS, Justice.

The defendants appealed from a judgment which annulled that part of an act of sale by the plaintiff to the defendants in so far as the description of 110 acres of land was concerned, the district judge having held that the description of this additional tract of land was written into the act of sale after it was signed and without the consent of the vendor.

The plaintiff answered the appeal and prayed that the judgment be amended so as to set aside the entire sale, because he was forced to sign it through threats of violence made by the defendants, and in the alternative, in the event the whole transaction is not annulled, that the judgment appealed from be affirmed.

The plaintiff instituted the suit on May 14, 1936, against the defendants to have annulled and set aside, in its entirety, an act of sale of certain lands by himself to the defendants dated November 4, 1935, on the grounds that he was compelled by threats and coercion of the defendants to sell the land and sign the act of sale; and, in the alternative, if the sale were not set aside in toto, that the deed be annulled in so far as 110 acres of land described therein are concerned, because the description thereof was added without his knowledge and consent after he signed the act of sale.

The defendants denied that the plaintiff signed the act of sale through fear or coercion. They averred that they paid plaintiff the sum of $1,500 for the 110 acres of land in question; that they had previously paid him for the other 83 acres of land described in the deed; and that the whole 193 acres of land was described in the act of sale at the time plaintiff signed it.

The trial judge concluded that the seller had not been forced by the defendants' threats or coercion to sign the deed, but held that the description of the 110 acres of land was added without his consent and knowledge after his signature was affixed to the act.

The evidence as to threats and coercion consisted mainly of letters written by the defendant's wife to the plaintiff, in which she stated that her husband was determined to resort to violence in the event the plaintiff did not deal fairly with him in re-transferring certain property that the defendant, Arthur E. McGinty, had transferred to the plaintiff to avoid paying certain creditors and to secure payment of certain money advanced by the plaintiff to her husband. While these letters contained serious threats, it appears from the plaintiff's conduct that he was not influenced thereby in executing the act of sale by himself to his brother, Arthur, covering the 83 acres of land. In a letter which the plaintiff wrote Arthur E. McGinty, on October 16, 1935, he stated that the sum of $1,500 would be accepted as a fair and reasonable price to liquidate his brother's indebtedness to him

for advances made with reference to the property and that it was his wish that his brother retain the property as his home as Arthur had worked hard and deserved to be happy. From that date until November 4, 1935, when the act of sale was passed before a notary, no other threats are shown to have been made by the defendants against the plaintiff in connection with the transaction. It appears that the plaintiff, at the request of Arthur's wife who had made every effort to keep peace between the brothers, went with them to the notary's office to receive the $1,500 cash as consideration for the sale of the land and to sign the act. Without narrating the evidence in detail it is sufficient to say that it amply supports and justifies the conclusion of our learned brother below that the plaintiff did not sell the property to the defendants because of threats or coercion.

With reference to the question of forgery by adding the description of the additional 110 acres in the act of sale, the defendants testified that the description thereof was contained in the act at the time the plaintiff signed it; that they had already paid plaintiff the full indebtedness for advances against the 83 acres of land; and that the $1,500 cash was the consideration for the 110-acre tract.

J. D. Hall, a notary public, justice of peace, insurance agent and one of the witnesses to the act of sale, testified that he prepared the act of sale in question on an old Underwood typewriter in his office at the request of Arthur E. McGinty and went with the defendants by automobile

from Ringgold, Bienville Parish, Louisiana, to Ruston, Lincoln Parish, Louisiana, where the plaintiff was employed as a professor at the Louisiana Polytechnic Institute; that the defendant, Mrs. McGinty, went into the plaintiff's office and spoke to him, and later they came out to the automobile, in which the other parties remained; that all parties then agreed to go before a notary to have the act of sale executed; and that the description of the 110 acres of land was written into the deed at the time he prepared it.

The other witness to the act, R. D. Roach, the plaintiff, and the notary, W. D. Richardson, testified that the description of the 110 acres of land was not in the act of sale on November 4, 1935, at the time the parties signed it; and that the original act of sale, which was introduced in evidence, shows that after the last word in the description of the 83-acre tract of land, a period had been changed to a comma and the description of the 110-acre tract was added.

The notary public, who executed the act of sale, was selected by the defendants and his testimony is unequivocal and positive that at the time the parties signed the act the only description contained therein was of the 83 acres of land.

The 83-acre tract was known as "Home Place" and in Mrs. McGinty's letter to the plaintiff, dated October 15, 1935, she stated that Arthur, her husband, was willing to give or take $1,000 for "Home Place." In her testimony, on cross-examination, she stated that plaintiff had told her and another brother and sister

that he would sell 70 acres for $1,500. She replied to the question, "And that was the only land you intended to buy?" "Yes." She also said that "Home Place," which her letter referred to in making the offer to buy or sell for $1,000, is a place on which she and her husband were living and that they usually spoke of it as "Home Place."

The evidence also shows that when the notary executed the act of sale, he gave the document to Arthur E. McGinty and that about December 23, 1935, the plaintiff, while at the courthouse for the purpose of paying taxes, discovered that a description of the 110 acres of land had been added in the act of sale and he immediately filed a notice of lis pendens.

The record, as a whole, leaves no doubt that the plaintiff advanced money to his brother, Arthur, who had transferred the 83 acres, or "Home Place," to the plaintiff on January 19, 1932, and that the defendants were anxious to have the property re-transferred to them. The main controversy was over the amount of money the defendants were willing to pay the plaintiff as consideration for transferring the property back to them in the final liquidation of their transactions. The plaintiff had acquired the 110 acres of land, consisting of two tracts of 70 and 40 acres, respectively, from other parties. Nowhere in the correspondence is any mention made of the 110-acre tract.

We cannot say on the record as made up that our learned brother below is in error in concluding that the parties did not contemplate the transfer of the 110-

acre tract and the description thereof in the act of sale was added without plaintiff's consent after the parties executed the act before the notary public.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., does not take part.

PONDER, J., absent.