FRUGÉ, Judge.
This suit concerns the validity of a testament executed by Norma Vicknair Guidry, deceased.
In September of 1961, the deceased, married and living with her husband in St. Landry Parish, went to Baton Rouge to stay at the home of her sister, defendant Mathil-da V. Story. On November 30, 1961, deceased executed a statutory will in Baton Rouge before a notary public and two witnesses. In the will she bequeathed to defendant “all of my property, both real and personal, of which I die possessed.” The testatrix passed away on January 2, 1962. The will was probated on May 17, 1962. In July of 1962 the plaintiff, Leoba Vick-nair Viola, another sister of the testatrix, brought an action to have the testament declared null and void. The trial judge rendered a judgment in favor of the plaintiff, holding that the will was null, void and without effect because the testatrix did not signify and declare that the instrument was her last will and testament as required by LSA-R.S. 9:2442. From this judgment defendant appeals.
“The plaintiff in an action to annul a probated testament has the burden of proving the invalidity thereof, unless the action was instituted within three months of the date the testament was probated. In the latter event, the defendants have the burden of proving the authenticity of the testament, and its compliance with all of the formal requirements of the law.” LSA-Code of Civil Procedure Art. 2932. Since the present action was brought within three months of the date the testament was probated, the defendant has the burden of proving its authenticity and compliance with the formal requirements required by law.
LSA-R.S. 9:2442 provides, in part, as follows:
“In addition to the methods provided in the Louisiana Civil Code, a will shall be valid if in writing (whether typewritten, printed, mimeographed, or written in any other manner), and signed by the testator in the presence of a notary public and two witnesses in the following manner:
“(1) Testator. In the presence of the notary and both witnesses the testator shall signify to them that the instrument is his will and shall sign each separate sheet of the instrument.”
And, LSA-R.S. 9:2443 provides that “those who know not how or are not able to read, cannot make dispositions in the form of the will provided for in [LSA-] R.S. 9:2442.”
The record shows that the testament was dictated by a law partner of the notary. The notary, along,with a secretary and a law clerk, proceeded to the home of the defendant, where the deceased was staying. The notary read the will to the deceased and asked her if that was her last will and testament. She indicated that it was by shaking her head. She also said something in French to her sister. She then proceeded to sign the will. Because her hand was shaky the notary assisted her in signing.
Plaintiff contends that the will is void because the testament was not dictated to the person who typed it or in the presence of the notary who executed it or persons who witnessed it. LSA-R.S. 9:2442 provides that the will “shall be valid if in writing (whether typewritten, printed, mimeographed, or written in any other manner), and signed by the testator in the presence of a notary public and two witnesses * * *.” Plaintiff asks us to require for validity of the will more than is required by the statute. We cannot hold the testament invalid on these grounds.
*761 Plaintiff argues that the will was not signed by the testatrix because the notary assisted her in signing. Assistance in merely helping the testatrix steady her hand while signing will not invalidate a testament. Succession of Barrieu, La.App., 148 So.2d 836. The record shows that the notary assisted the testatrix because she was shaky. There was no coercion to sign.
Plaintiff also contends that the testament is null and void because the testatrix did not verbally and orally express her signification that the act was her last will and testament. The testatrix signified her intention by shaking her head. The statute requires that the testatrix is to “signify to them that the instrument is his will and shall sign each separate sheet of the instrument.” Nothing is said about requiring a verbal signification. We can conceive of situations where persons unable to speak would be competent to execute wills under LSA-R.S. 9:2442.
Plaintiff further states that the will is invalid because defendant did not show that the deceased was able to read at the time of execution of the testament. The record shows that the testatrix had learned to read. If she did not know how to read when the testament was executed it was because of some mental defect. As we shall discuss below, we have concluded that plaintiff did not prove that the testatrix was of unsound mind when executing the testament. Therefore we must hold that the deceased knew how to read when she executed the testament. She was qualified to execute the testament under LSA-R.S. 9:2443, quoted supra.
Most of the authorities relied on by plaintiff concerned nuncupative wills by public act under LSA-Civil Code Arts. 1578-1580. Those wills are subject to rigid formalities and compliance with such must be shown on the face of the instrument. Succession of Pizani, La.App., 146 So.2d 16. But in 1952 the Legislature provided for a new type of will in addition to those provided for in the Civil Code. (LSA-R.S. 9:2442 et seq.) The purpose of this legislation was to provide a method of disposing of property mortis causa without many of the technicalities connected with wills under the Civil Code. The formal requirements are much less demanding. 20 La.L.Rev. 610; 36 Tulane L.Rev. 1; 13 La.L.Rev. 32. Therefore, cases cited by plaintiff dealing with the rigid technical requirements for a valid nuncupative will by public act under the Civil Code are not pertinent to the will in the case before us. Plaintiff did cite Succession of Pope, 230 La. 1049, 89 So.2d 894, which dealt with a will under LSA-R.S. 9:2442 et seq. But in that case the will was void because the testator and both witnesses did not sign the instrument in the presence of the notary and the notary did not sign in the presence of both witnesses. Such is not the case in the present controversy.
Plaintiff takes the position that the deceased was of unsound mind at the time of the execution of the will. “To make a donation either inter vivos or mortis causa, one must be of sound mind.” LSA-Civil Code Art. 1475. “‘Testamentary capacity is always presumed. In other words, every person is considered under the law to be of sound mind, and this presumption continues until destroyed by cogent, satisfactory, and convincing evidence. The degree of proof required to overcome the presumption of sanity and of mental disposing capacity may be likened to that required in criminal cases to rebut and overcome the presumption of innocence which the law creates in favor of a person on trial for a crime. This is, we think, a settled rule of which there can be no doubt.’ ” Succession of Schmidt, 219 La. 675, 53 So.2d 834, 835; Succession of Herson, La.App., 127 So.2d 61.
In this case the plaintiff did not sustain her strong burden of proving that the testatrix lacked testamentary capacity. She relies heavily on the testimony of certain *762 doctors who examined the testatrix before and during the period of time when the testament was executed. A general prac-tioner examined the testatrix about- three months before she signed the will. This was the only time that he examined her. He stated that he felt that the testatrix had a psychotic condition. Testimony by doctors who- were caring for and examining the testatrix at the time the testament was executed indicated that there was a possibility that her mind was affected by her illness.
“Manifestly, we know of no rule of law which makes it imperative upon the courts to resolve the issue of testamentary capacity solely upon the testimony of medical experts. Of necessity, the testimony of medical experts should not be ignored but should be considered and weighed along with all of the facts and circumstances presented in the record. It is equally true that lay testimony must be taken in connection with expert testimony, attaching to it such weight as would guide us in resolving the issue of mental capacity.” Succession of Holland, 236 La. 8, 106 So.2d 697, 702.
In the case before us, in addition to medical testimony, there is testimony by neighbors and acquaintances of the testatrix which indicates that the testatrix was of sound mind when she executed the testament. In fact, the medical testimony itself only indicated a possibility of unsound mind at the time of execution of the testament; it was not conclusive enough to sustain plaintiff’s strong burden of proving that the testatrix lacked testamentary capacity.
We therefore hold that the will executed by the testatrix was valid.
For the foregoing reasons the judgment of the district court is reversed and set aside. It is hereby ordered, adjudged and decreed that there be judgment in favor of the defendant, Mrs. Mathilda V. Story, and against the plaintiff, Mrs. Leoba Vick-nair Viola, decreeing the last will and testament of the decedent, Norma Vicknair Guidry, to be valid and rejecting plaintiff’s-demands that the previous order for probate and execution of said will be annulled. Costs of all proceedings are assessed to-plaintiff.
Reversed and rendered.