649 So.2d 617 (1994)
SUCCESSION OF Alfred C. DUBOIN.
No. 94-446.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1994.
John L. Olivier, Sunset, for Alfred Charles (A.C.) Barry.
Lewis H. Pitman Jr., New Iberia, for Ginger Farrell AKA Edna Eastland.
*618 Before GUIDRY, C.J., and KNOLL and WOODARD, JJ.
GUIDRY, Chief Judge.
This is an action to probate a statutory will dated May 15, 1987. The plaintiff in this proceeding is Ginger Farrell a/k/a Edna Eastland, decedent's stepdaughter. The defendant is Alfred C. Barry, decedent's nephew. The trial court held that the testator lacked the requisite testamentary capacity at the time of the making of the will of May 15, 1987 and declared same invalid. Plaintiff appeals from that judgment. Defendant has answered plaintiff's appeal seeking damages and attorney's fees based on the contention that plaintiff has filed a frivolous appeal.

FACTS
Alfred Charles Duboin, Jr. died on May 25, 1990. Upon his death, three wills signed by Duboin were discovered. The first will was a statutory will dated September 13, 1965 in which Duboin bequeathed all of his property in indivision to his niece and nephews, namely: Maida Ruth Barry Dotson, Walter A. Barry, Jr. and Alfred C. Barry. Alfred C. Barry was designated as executor of his estate. The second will dated October 29, 1969, granted the naked ownership of all of Duboin's property to his niece and nephews in indivision. This second will provided that Lucy Richardson Duboin, Duboin's wife, was to be granted the usufruct over his entire estate. Alfred C. Barry was again designated as executor. The third will, which is at issue herein, is a statutory will dated May 15, 1987. In that will, Duboin bequeathed the naked ownership of his entire estate to his stepdaughter, Ginger Farrell a/k/a Edna Eastland, and granted a usufruct over same to his wife, Lucy Richardson Duboin.
Duboin executed the third will while a resident of the Azalea Villa Nursing Home in New Iberia, Louisiana. Duboin had been a resident of that facility since September of 1984 because of failing health. Duboin was 91 years old at the time he executed the third will.
Prior to Duboin's execution of the third will, his nephews, Walter and A.C. Barry, commenced interdiction proceedings against him. The interdiction proceedings were filed on July 19, 1985 and a judgment decreeing Duboin an interdict was rendered on September 25, 1987.

TESTAMENTARY CAPACITY
We note from the outset that the question of testamentary capacity is a question of fact. The trial court's factual findings in this regard will not be disturbed on appeal unless they are clearly and manifestly erroneous. Succession of Ellis, 486 So.2d 260 (La.App. 3rd Cir.1986).
In its written reasons for judgment, the trial court stated in part that:
Under the present law, if the testator was judicially declared to be mentally infirm then the proponent of the will must prove the capacity of the donor by clear and convincing evidence. In this case, Mr. Duboin was adjudicated an interdict since July 19, 1985. Thus, Ginger Farrell has the burden of proving by clear and convincing evidence that Mr. Duboin had testamentary capacity when he executed the will.
The Court is of the opinion that Ginger Farrell did not satisfy her burden of proof by clear and convincing evidence.
Mr. Duboin was 91 years old when he executed the will. The evidence shows that he suffered a stroke in 1985, and bilateral cataracts, and was hard of hearing. The two witnesses of the statutory will testified that Mr. Duboin only nodded, said "yes, thank you," and spoke mostly French.
Impartial evidence concerning testamentary capacity included the testimony of Norma Dupre, the nursing home administrator. Miss Dupre had difficulty communicating with Mr. Duboin, who only understood after much repetition or with the assistance of his wife.
Thus, the Court will invalidate the May 15, 1987 will on the grounds that Mr. Duboin lacked the necessary testamentary capacity.
The "present law" alluded to by the trial judge in his reasons for judgment quoted *619 above concerns the amendment to Article 1482 of our Civil Code. Article 1482 presently provides as follows:
A person who challenges the capacity of a donor must prove by clear and convincing evidence that the donor lacked capacity at the time the donor made the donation inter vivos or executed the testament. However, if the donor made the donation or executed the testament at a time when he was judicially declared to be mentally infirm, then the proponent of the challenged donation or testament must prove the capacity of the donor by clear and convincing evidence.
The judgment decreeing Alfred Duboin an interdict took effect on July 25, 1985, i.e., the date the interdiction proceeding was instituted. See, La.C.C. art. 400. Thus, as correctly found by the trial court, Duboin was an interdict when the May 15, 1987 will was executed.
Under the law in effect on May 15, 1987, the opponent of the will had the burden to prove lack of testamentary capacity irrespective of whether the testator was interdicted or not. Article 1482 was amended, effective January 1, 1992, to provide that the proponent of the will of an interdict has the burden to prove testamentary capacity by clear and convincing evidence. Hence, the question necessarily arises as to whether the trial court erred in applying the law in effect on the date of the trial or the law in effect at the time the will was executed in order to determine Duboin's testamentary capacity. For reasons stated below, we hold that the law in effect on the date of the trial was the appropriate standard to apply.
In Succession of Sanders, 485 So.2d 126 (La.App. 2d Cir.1986), writ denied, 487 So.2d 443 (La.1986), the Second Circuit determined that amendments to Civil Code Article 209 which heightened the burden of proof in a filiation action from a preponderance of the evidence to clear and convincing evidence was strictly an evidentiary matter and thus the amendment was procedural in nature. Consequently, the Sanders court concluded the amendment to Article 209 was entitled to retroactive effect. Similarly, in the present case, we are confronted with a statutory amendment to Article 1482 which has changed the burden of proof with respect to the issue of testamentary capacity. We find the reasoning of the Sanders court equally applicable herein. We consider the amendment to Article 1482 to be procedural in nature inasmuch as it concerns an evidentiary matter and, therefore, entitled to retroactive application.
As aforestated, the factual findings of a trial court on the issue of testamentary capacity are entitled to great weight and not reversible absent clear error. After carefully reviewing the record, we find no clear error in the trial court's conclusion that the proponent of the will, Ginger Farrell a/k/a Edna Eastland, failed to present clear and convincing evidence that Duboin had the requisite testamentary capacity.[1]

FRIVOLOUS APPEAL
By way of an answer to Farrell's appeal, appellees contend that appellant should be sanctioned for filing a frivolous appeal. Under the established jurisprudence of this court, an appeal is deemed to be frivolous when it presents no serious legal question, when the appeal is taken solely for the purpose of delay, or when it is obvious that counsel for appellant is not sincere in the view of the law he advocates to the court. Billeaud v. Association of Retarded Citizens of Evangeline, 569 So.2d 1020 (La.App. 3rd Cir.1990); Owens v. Jackson, 550 So.2d 359 (La.App. 3rd Cir. 1989). Our review of the record fails to convince us that counsel for appellant was not sincere in his view of the law advocated to this court. Hence, we deny appellee's request for damages for frivolous appeal.

CONCLUSION
We affirm the judgment of the trial court and reject appellee's claim for damages and attorney's fees for a frivolous appeal. All *620 costs of this appeal are to be paid by appellant.
AFFIRMED.
KNOLL, J., concurs and assigns written reasons.
KNOLL, Judge, concurring.
I agree with the majority in all respects. However, I would further invalidate the will on grounds of undue influence and manipulations by Ginger Farrell, LSA-C.C. Art. 1479, as did the learned trial court. I incorporate herein the trial court's excellent reasons which clearly show the additional grounds for invalidating this will.
"... A donation shall be declared null upon proof that it is the product of influence by the donee or another person that so impaired the volition of the donor as to substitute the volition of the donee or other person for the volition of the donor.
The Court finds by clear and convincing evidence that Ginger Farrell did indeed substitute her volition for the volition of Mr. Duboin. The evidence shows that Ginger Farrell was instrumental in arranging the meeting between Lewis Pitman and Mr. Duboin which resulted in Mr. Duboin adopting Ginger Farrell, appointing her as his agent in the power of attorney, and leaving all of his property to her.
Miss Farrell has a history of manipulating the Duboins for her own personal gain. In 1987 the Azalea Villa nursing home had problems with the Duboins' bill. Their checking account balance was lower than Mrs. Duboin expected. Norma Dupre testified that Mrs. Duboin claimed that Ginger Farrell signed two checks without authorization. (Exhibit D-27) Miss Farrell explained that she wrote the checks to close the account and open a new account at another bank.
Willie Dupree, a long-time friend of Mr. Duboin, testified that in the past he heard arguments between Mrs. Duboin and Miss Farrell about changing Mr. Duboin's will. He also claimed that Miss Farrell tried to sell him part of Mr. Duboin's land and that Mr. Duboin never had anything good to say about Miss Farrell.
Miss Farrell denied ever meeting Mr. Dupree before the trial date.
In 1988, after moving the Duboins to the St. Martinville Nursing Home, Miss Farrell attempted to gain ownership of the Duboins' immovable property via a quit claim deed. However, the deed was nullified by the court because of Mr. Duboin's prior interdiction.
A review of the succession record indicates that Miss Farrell converted seventy shares of Cleco stock in Mr. Duboin's name for her own use. Included in the sworn descriptive list of assets of Mr. Duboin's estate is a claim against Ginger Farrell for that illegal conversion.
The Department of Veterans Affairs also investigated Miss Farrell for fraudulent receipt of VA pension benefits after her mother's death. Lucy Duboin's death certificate, issued in California, shows the date of death as February 13, 1991. (Exhibit D-25) However, Miss Farrell collected $6,281 in benefits after that date, claiming that her mother died on February 13, 1992. (Exhibit D-26) Miss Farrell went so far as to announce her mother's death in the Lafayette Daily Advertiser as February 12, 1992.
The Court will also invalidate the will because of the undue influence imposed on Mr. Duboin by Miss Farrell for her own gain."
NOTES
[1] In light of our decision affirming the trial court's ruling in this regard, we pretermit discussion of the other related issues urged by the litigants inasmuch as our ruling is dispositive of plaintiff's appeal.